FILED
**United States Court of Appeals
Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 11, 2022**

**Christopher M. Wolpert
Clerk of Court**

ABADE IRIZARRY,

    Plaintiff - Appellant,

v.

A. YEHIA,

    Defendant - Appellee.

------------------------------

FIRST AMENDMENT SCHOLARS;
JANE BAMBAUER; ASHUTOSH
BHAGWAT; CLAY CALVERT; ALAN
K. CHEN; MARGOT E. KAMINSKI;
SETH F. KREIMER; JUSTIN F.
MARCEAU; HELEN NORTON; SCOTT
SKINNER-THOMPSON; NATIONAL
POLICE ACCOUNTABILITY PROJECT;
CATO INSTITUTE; ELECTRONIC
FRONTIER FOUNDATION; UNITED
STATES OF AMERICA,

    Amici Curiae.

No. 21-1247

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:20-CV-02881-NYW)**
_____

Andrew T. Tutt, Arnold & Porter Kaye Scholer LLP, Washington, D.C. (Robert Reeves
Anderson and David S. Jelsma, Arnold & Porter Kaye Scholer LLP, Denver, Colorado;
Max Romanow, Arnold & Porter Kaye Scholer LLP, Chicago, Illinois; E. Milo Schwab,

Ascend Counsel, LLC, Denver, Colorado, with him on the briefs) for Plaintiff – Appellant.

Alexander James Dorotik, City of Lakewood, Lakewood, Colorado, for Defendant – Appellee.

Natasha N. Babazadeh (Kristen Clarke, Assistant Attorney General, Nicholas Y. Riley, Attorney, with her on the brief), U.S. Department of Justice, Washington, D.C., filed an amicus curiae brief for the United States of America.

Mukund Rathi, Sophia Cope, and Adam Schwartz, Electronic Frontier Foundation, San Francisco, California, filed an amicus curiae brief on behalf of Plaintiff – Appellant, for the Electronic Frontier Foundation.

Clark M. Neily III and Jay R. Schweikert, Cato Institute, Washington, D.C., filed an amicus curiae brief on behalf of Plaintiff – Appellant, for the Cato Institute.

Lauren Bonds, National Police Accountability Project, New Orleans, Louisiana, and David Milton, Boston, Massachusetts, filed an amicus curiae brief on behalf of Plaintiff – Appellant, for the National Police Accountability Project.

Matthew R. Cushing and Elizabeth Truitt, University of Colorado Law School Appellate Advocacy Practicum, Boulder, Colorado, filed an amicus curiae brief on behalf of Plaintiff – Appellant, for the First Amendment Scholars.

_____

Before **MATHESON**, **KELLY**, and **McHUGH**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

Early in the morning on May 26, 2019, Abade Irizarry, a YouTube journalist and blogger, was filming a DUI traffic stop in Lakewood, Colorado.  Officer Ahmed Yehia arrived on the scene and stood in front of Mr. Irizarry, obstructing his filming of the stop. When Mr. Irizarry and a fellow journalist objected, Officer Yehia shined a flashlight into Mr. Irizarry's camera and then drove his police cruiser at the two journalists.

Mr. Irizarry sued under 42 U.S.C. § 1983, alleging that Officer Yehia violated his First Amendment rights. The district court dismissed the complaint for failure to state a claim. It determined that Mr. Irizarry had alleged a constitutional violation but held that Officer Yehia was entitled to qualified immunity because the violation was not one of clearly established law. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I.  BACKGROUND

### A. *Factual Allegations*

"In reviewing a motion to dismiss, we accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). Because Mr. Irizarry proceeded pro se before the district court, we liberally construe the pleadings. *See Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). Under these standards, we summarize the allegations in the complaint.

Mr. Irizarry is a "Youtube journalist and blogger" who "regularly publishes stories about police brutality and conduct or misconduct." App. at 9 ¶ 10, 11 ¶ 24. On May 26, 2019, he and three other "YouTube journalists/bloggers" were filming a DUI traffic stop with their cell phones and cameras "for later broadcast, live-streaming, premiers, and archiving for their respective social medial channel[s]." *Id.* at 9 ¶¶ 10-11.[1]

---

[1] The complaint did not allege when the incident occurred. The parties do not dispute that it occurred on May 26, 2019.

3

Officers on the scene contacted Officer Yehia to report that four males were filming the traffic stop.[2]  Officer Yehia drove to the scene "in full regalia in a Marked cruiser, with every single light . . . turned on." *Id.* at 9 ¶ 13.  He exited his vehicle and "intentionally positioned himself directly in front of [Mr. Irizarry] . . . to make sure he intentionally obstructed the camera view of the D.U.I. Roadside sobriety test." *Id.* at 9 ¶ 14.  Mr. Irizarry and another journalist, Eric Brandt, "voiced their disapproval of the intentional obstruction" and "began to loudly criticize" Officer Yehia. *Id.* at 10 ¶ 16. Officer Yehia shined an "extremely bright flashlight" in Mr. Irizarry's and Mr. Brandt's cameras, "saturating the camera sensors." *Id.* at 10 ¶ 17.

Officer Yehia continued "harassing" Mr. Irizarry and Mr. Brandt until another officer told him to stop. *Id.* at 10 ¶ 19.  Officer Yehia got back into his cruiser, "drove right at [Mr. Irizarry] and Mr. Brandt, and sped away." *Id.* at 10 ¶ 20.  He made a U-turn, "gunned his cruiser directly at Mr. Brandt, swerved around him, stopped, then repeatedly began to blast his air horn at [the two men]." *Id.* at 10 ¶ 21.[3]  Eventually, Officer Yehia

---

[2] The complaint did not indicate how many officers were at the scene.

[3] The district court said that Mr. Irizarry did not state—either in his complaint or his response to the motion to dismiss—that his claim extended to Officer Yehia's conduct behind the wheel.  The court therefore addressed only whether Officer Yehia violated Mr. Irizarry's rights by standing in front of him and shining a flashlight into his camera.

The district court erred in limiting its analysis.  The complaint alleged that all of Officer Yehia's actions, including driving and honking at Mr. Irizarry, violated his First Amendment rights. *See* App. at 11 ¶ 23 ("[Officer] Yehia's actions constituted substantial interfer[e]nce preventing [Mr. Irizarry] and Mr. Brandt from adequately collecting meaningful which the[y] intended to, or had already been actively [] attempting to publish.").  We understand the complaint's reference to "collecting meaningful" to mean collecting meaningful video footage.

was instructed to leave the scene due to his "disruptive and uncontrolled behavior." *Id.* at 10 ¶ 22.[4]

### B. *Procedural History*

Mr. Irizarry, proceeding pro se, sued Officer Yehia under § 1983, claiming that the officer violated his First Amendment rights. He alleged that (1) Officer Yehia's actions amounted to a "blatant prior restraint" and (2) Officer Yehia deprived him of his "rights to freedom of the press." *Id.* at 11 ¶¶ 27-28. The complaint also stated that Officer Yehia sought "to punish [Mr. Irizarry] for exercising his rights." *Id.* at 8 ¶ 7.

Officer Yehia moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting a qualified immunity defense. The district court granted the motion.[5] It concluded that the complaint alleged a First Amendment constitutional violation based on prior restraint and retaliation. Although the Tenth Circuit had not previously recognized a First Amendment right to record police officers performing their official duties in public, the court, relying on out-of-circuit decisions, held that the First Amendment guarantees such a right, subject to reasonable time, place, and manner restrictions.

The district court nonetheless held that Officer Yehia was entitled to qualified immunity because Mr. Irizarry had not shown a violation of clearly established law. He "failed to direct the court to a case which demonstrates that Officer Yehia was on notice that . . . standing in front of and shining a flashlight into [Mr. Irizarry's]

---

[4] The complaint did not allege who instructed Officer Yehia to leave.

[5] The parties agreed to have all proceedings in the case decided by a magistrate judge under 28 U.S.C. § 636(c).

camera . . . violated Mr. Irizarry's First Amendment rights." *Id.* at 108. The court

therefore dismissed the suit against Officer Yehia with prejudice.

Mr. Irizarry timely appealed.

## C. *Legal Background*

### 1. Rule 12(b)(6) Dismissal

"We review de novo a district court's ruling on a motion to dismiss a complaint

because of qualified immunity." *Thompson v. Ragland*, 23 F.4th 1252, 1255 (10th Cir.

2022). "We accept all well-pleaded factual allegations in the complaint as true, and we

view them in the light most favorable to the nonmoving party." *Sinclair Wyo. Refin. Co.*

*v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (citation, quotations, and

alterations omitted). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

### 2. Qualified Immunity

Section 1983 of Title 42 provides that a person acting under color of state law who

"subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured." 42 U.S.C. § 1983.

"Individual defendants named in a § 1983 action may raise a defense of qualified

immunity, which shields public officials from damages actions unless their conduct was

unreasonable in light of clearly established law." *Est. of Booker v. Gomez*, 745 F.3d 405,

411 (10th Cir. 2014) (citations, quotations, and alterations omitted). When a defendant

invokes qualified immunity, the plaintiff can overcome it by showing "(1) the

defendant's actions violated a constitutional or statutory right, and (2) that right was

clearly established at the time of the defendant's complained-of conduct." *Truman v.*

*Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021).

3. **First Amendment Retaliation**

To state a First Amendment retaliation claim, a plaintiff must allege facts showing

"(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's

actions caused the plaintiff to suffer an injury that would chill a person of ordinary

firmness from continuing to engage in that activity; and (3) that the defendant's adverse

action was substantially motivated as a response to the plaintiff's exercise of

constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.

2000) (quotations omitted).[6]

---

[6] In this context, an injury is an adverse consequence that the plaintiff suffers at
the hands of the defendant. *See, e.g.*, *Worrell*, 219 F.3d at 1213 (withdrawal of a job
offer and adverse impacts to future job prospects could qualify as injuries that would chill
a person of ordinary firmness from continuing to engage in protected activity); *Howards
v. McLaughlin*, 634 F.3d 1131, 1144 (10th Cir. 2011), *rev'd and remanded on other
grounds sub nom.*, *Reichle v. Howards*, 566 U.S. 658 (2012) ("[A]n arrest in retaliation
for the exercise of protected speech constitutes an injury cognizable under our First
Amendment jurisprudence."); *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir.
2007) (physical and verbal intimidation are cognizable injuries under the second element
of *Worrell*).

## II. DISCUSSION

The complaint alleged a First Amendment retaliation claim under clearly established law, so Officer Yehia is not entitled to qualified immunity.[7] We reverse.

Analyzing the three elements of a retaliation claim stated in *Worrell* under the facts alleged in the complaint, we conclude as follows:

First, as to constitutionally protected activity, the Tenth Circuit has not recognized a First Amendment right to film the police performing their duties in public. We recognize that the right exists and was clearly established when the incident occurred. Because Mr. Irizarry has alleged facts showing he was exercising his First Amendment right to film the police, he has met the first element of his retaliation claim under clearly established law.

Second, Mr. Irizarry's allegations also show that Officer Yehia's actions against him would chill a person of ordinary firmness from continuing to engage in protected filming activity. Because these actions obviously infringed protected activity and equaled or exceeded those in comparable Tenth Circuit and out-of-circuit cases, Mr. Irizarry has met the second element of his retaliation claim under clearly established law.

---

[7] The pro se complaint did not use the word "retaliation," but it alleged that Officer Yehia was "motivated . . . to punish [Mr. Irizarry] for exercising his rights." *See* App. at 8 ¶ 7. To the extent the complaint attempted to allege a prior restraint claim, Mr. Irizarry has abandoned that theory on appeal.

Although Officer Yehia does not contest the district court's determination that he violated Mr. Irizarry's First Amendment rights, *see* Aplee. Br. at 5 n.2, 6, we analyze whether the complaint alleged a retaliation claim as a necessary predicate to our discussion of clearly established law.

Third, the complaint alleged that Mr. Irizarry's protected filming activity motivated Officer Yehia's adverse actions, meeting the third element of the retaliation claim under clearly established law.

Thus, as to all three elements of First Amendment retaliation, (1) the complaint alleged a constitutional violation, and (2) Mr. Irizarry has shown the violation is one of clearly established law. We expand on these points below.

### A. *Constitutional Violation*

The complaint plausibly alleged that Officer Yehia retaliated against Mr. Irizarry for exercising his First Amendment rights. It alleged facts satisfying all three elements of a First Amendment retaliation claim under *Worrell*.

### 1. Constitutionally Protected Activity

Mr. Irizarry was engaged in protected First Amendment activity when he filmed the traffic stop. We recognize this right based on (a) core First Amendment principles and (b) relevant precedents from this and other circuits.

#### a. *First Amendment principles*

Three well-established First Amendment principles show that filming the police performing their duties in public is protected activity.

First, "'[t]here is practically universal agreement that a major purpose of' the First Amendment 'was to protect the free discussion of governmental affairs.'" *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam)). This purpose enables "the press . . . to serve as a powerful antidote to any abuses of power by governmental officials." *Mills v.*

9

*Alabama*, 384 U.S. 214, 219 (1966).  Filming the police and other public officials as they perform their official duties acts as "a watchdog of government activity," *Leathers v. Medlock*, 499 U.S. 439, 447 (1991), and furthers debate on matters of public concern.

Second, "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972).  As the First Circuit noted, "An important corollary to this interest in protecting the stock of public information is that 'there is an undoubted right to gather news from any source by means within the law.'" *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) (internal quotations and alterations omitted)).  Filming the police is a form of news gathering.

Third, videorecording is "unambiguously" speech-creation, not mere conduct. *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1228 (10th Cir. 2021), *cert. denied*, No. 21-760, --- S.Ct. ----, 2022 WL 1205840 (Apr. 25, 2022).  "If the creation of speech did not warrant protection under the First Amendment, the government could bypass the Constitution by simply proceeding upstream and damming the source of speech." *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017) (quotations and alterations omitted); *see also ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) ("The right to publish or broadcast an audio or audiovisual recording would be insecure, or largely ineffective, if the antecedent act of *making* the recording is wholly unprotected.").[8]

---

[8] As the Seventh Circuit explained, "[t]he act of *making* an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and

b. *Relevant precedents*

In *Western Watersheds*, we indicated that the First Amendment protects the filming of a police encounter. *W. Watersheds*, 869 F.3d at 1196. There, plaintiffs challenged two Wyoming statutes that "imposed heightened penalties above and beyond Wyoming's general trespass provision" on any person who, "crosses private land to access adjacent or proximate land where he collects resource data." *Id.* at 1191 (quoting Wyo. Stat. §§ 6-3-414(a)-(c); 40-27-101(c)) (alteration omitted). The statutes defined the phrase "collects resource data" to include gathering information about "numerous activities on public lands, such as writing notes on habitat conditions, photographing wildlife, or taking water samples, so long as an individual also records the location from which the data was collected." *Id.* at 1191-92 (citing Wyo. Stat. §§ 6-3-414(e)(i), (iv); 40-27-101(h)(i), (iii)).

Plaintiffs argued that the statutes violated the First Amendment. *Id.* at 1193. Relying on decisions from other circuits recognizing a First Amendment right to film the police in public, we held that the statutes regulated protected speech.[9] *Id.* at 1197. We said that "[a]n individual who photographs animals or takes notes about habitat

---

press rights as a corollary of the right to disseminate the resulting recording." *Alvarez*, 679 F.3d at 595.

[9] We remanded to the district court to determine (1) the appropriate level of scrutiny to be applied, and (2) whether the statutes survived review. *W. Watersheds*, 869 F.3d at 1197-98.

11

conditions is creating speech in the same manner as an individual who records a police encounter." *Id*. at 1196.

Our statement in *Western Watersheds* finds support from every circuit to consider whether there is a First Amendment right to film the police in public. We summarize those opinions.

### i. *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995)

Mr. Fordyce was videotaping police officers working a public protest, and one officer "attempted physically to dissuade" him from doing so. *Fordyce*, 55 F.3d at 438. Mr. Fordyce brought a § 1983 claim against various officers "for interfering with his First Amendment right to gather news." *Id.* The district court granted summary judgment to the defendants, but the Ninth Circuit reversed, concluding there was "a genuine issue of material fact . . . regarding whether [Mr.] Fordyce was assaulted and battered by a Seattle police officer in an attempt to prevent or dissuade him from exercising his First Amendment right to film matters of public interest." *Id.* at 439. Citing *Fordyce*, the Ninth Circuit has since held that "[t]he First Amendment protects the right to photograph and record matters of public interest. This includes the right to record law enforcement officers engaged in the exercise of their official duties in public places." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) (citations omitted).

### ii. *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000)

Mr. Smith alleged that city police prevented him and his wife from videotaping their actions. *Smith*, 212 F.3d at 1332. The Eleventh Circuit held that there is "a First Amendment right, subject to reasonable time, manner and place restrictions, to

photograph or videotape police conduct" rooted in the First Amendment right "to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Id.* at 1333. The court, however, affirmed dismissal of the suit because the plaintiffs did not demonstrate that the defendants violated their First Amendment rights. *Id.*

### iii. *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011)

Police arrested Mr. Glik for trying to film officers arresting a young man. *Glik*, 655 F.3d at 79. Mr. Glik sued the officers under § 1983, alleging that they violated his First Amendment rights by arresting him for filming the arrest. *Id.* at 80. The First Circuit held that Mr. Glik had a clearly established "right to film government officials, including law enforcement officers, in the discharge of their duties in a public space." *Id.* at 85.

The court explained that "[t]he filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within" established First Amendment principles related to newsgathering and the public's right to receive information. *Id.* at 82. Relatedly, the court noted that "[g]athering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Id.* (quoting *Mills*, 384 U.S. at 218). And that interest is especially prominent in matters involving law enforcement officials because they "are granted substantial discretion that may be misused to deprive individuals of their liberties." *Id.*

13

iv.  *ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)

The ACLU of Illinois brought a pre-enforcement challenge to the Illinois eavesdropping statute, which made it a class-one felony to create audio or audiovisual recordings of law enforcement officers performing their duties.  *Alvarez*, 679 F.3d at 586. The Seventh Circuit, reviewing the denial of a preliminary injunction, held that the statute was "likely unconstitutional."  *Id.* at 608.  The court explained that "[t]he act of *making* an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording."  *Id.* at 595.  And because the statute "interferes with the gathering and dissemination of information about government officials performing their duties in public. . . . the eavesdropping statute burdens speech and press rights and is subject to heightened First Amendment scrutiny."  *Id.* at 600.

v.  *Fields v. City of Phila.*, 862 F.3d 353 (3d Cir. 2017)

*Fields* was a consolidated appeal involving two incidents in which police interfered with the appellants' ability to record the police.  In the first incident, the appellant was trying to film an arrest during a protest when "[a]n officer abruptly pushed [her] and pinned her against a pillar for one to three minutes, which prevented her from observing or recording the arrest."  *Fields*, 862 F.3d at 356.  In the second, the appellant took a photograph of the police breaking up a house party, and an officer ultimately "arrested him, confiscated his phone, and detained him."  *Id.*

The Third Circuit joined the "growing consensus" of circuit courts holding that "there is a First Amendment right to record police activity in public" subject to

14

reasonable time, place, and manner restrictions. *Id.* at 355-56, 360.  The court explained

that "[t]he First Amendment protects actual photos, videos, and recordings, . . . and for

this protection to have meaning the Amendment must also protect the act of creating that

material." *Id.* at 358 (citation omitted).  Thus, the court concluded that "under the First

Amendment's right of access to information the public has the commensurate right to

record—photograph, film, or audio record—police officers conducting official police

activity in public areas." *Id.* at 360.

### vi. *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017)

Mr. Turner videotaped a police station from a public sidewalk across the street.

*Turner*, 848 F.3d at 683.  Two officers approached him, asked for his ID, and detained

him for investigation because they "were concerned about who was walking around with

a video camera." *Id.*  The officers eventually released Mr. Turner and returned his

camera, which they had confiscated. *Id.*  The Fifth Circuit, echoing the reasoning and

conclusion of every other circuit to address the question, held that the First Amendment

protects the right to record police in public, subject to reasonable time, place, and manner

restrictions. *Id.* at 690 ("We agree with every circuit that has ruled on this question:

Each has concluded that the First Amendment protects the right to record the police.").

\*     \*     \*     \*

Based on First Amendment principles and relevant precedents, we conclude there

is a First Amendment right to film the police performing their duties in public.[10]

---

[10] This right is subject to reasonable time, place, and manner restrictions. *See*
*Glik*, 655 F.3d at 84.  But in this case, there is no "time, place, and manner" restriction

15

2. **Injury That Would Chill Protected Activity**

Mr. Irizarry adequately alleged that Officer Yehia's actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to" film the traffic stop. *Worrell*, 219 F.3d at 1212 (quotations omitted). As to this second element of the *Worrell* test, "our standard for evaluating th[e] chilling effect on speech is objective, rather than subjective." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (quotations omitted). Physical and verbal intimidation can chill speech. *Van Deelen v. Johnson* is instructive. *See* 497 F.3d at 1157-58.

In *Van Deelen*, the plaintiff brought several tax appeals challenging property tax assessments. *Id.* at 1153-54. At a meeting between the plaintiff and government tax appraisers, a sheriff's deputy "repeatedly and intentionally 'bumped' [the plaintiff]." *Id.* at 1154. The plaintiff also alleged that the deputy "held his hand on his gun and made menacing looks" during the meeting and that another county official "brow beat" the plaintiff "by scowling and staring" at him. *Id.* Finally, at the end of the meeting, the deputy told the plaintiff that county officials had instructed the deputy "to do whatever

---

issue because a "peaceful recording" of a traffic stop in "a public space that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation." *Id.*

Based on the allegations in the complaint, Mr. Irizarry did not interfere with the traffic stop or hinder law enforcement. Although Mr. Irizarry and Mr. Brandt "voiced their disapproval of [Officer Yehia's] intentional obstruction of content gathering . . . [and] loudly criticize[d] [Officer Yehia]," App. at 10 ¶ 16, their protests did not impede officers from performing their duties. Further, the traffic stop occurred on a public street, a traditional public forum where "the rights of the state to limit the exercise of First Amendment activity are 'sharply circumscribed.'" *Glik*, 655 F.3d at 84 (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

16

necessary to put a scare into you. If you show up for another tax appeal hearing, I might have to shoot you." *Id.* (quotations omitted). We held that such "physical and verbal intimidation . . . surely suffice[s] under our precedents to chill a person of ordinary firmness from continuing to seek redress for (allegedly) unfair property tax assessments." *Id.* at 1157.

Officer Yehia's actions would chill a person of ordinary firmness from continuing to film the traffic stop for two reasons.

First, Mr. Irizarry suffered an injury when Officer Yehia stood in front of his camera and shined a flashlight into it, making it difficult if not impossible to continue recording a potentially critical moment of the police activity. This injury alone would chill a person of ordinary firmness from continuing to film the traffic stop. But there was more.

Second, Officer Yehia did more than threaten violence, as the defendants did in *Van Deelen. See* 497 F.3d at 1157. He directed violence towards Mr. Irizarry by driving his police cruiser "right at" him and by "gunn[ing]" it at his nearby colleague, Mr. Brandt.[11] App. at 10 ¶¶ 20-21; *see United States v. Garcia*, 34 F.3d 6, 13 (1st Cir. 1994) (aiming car at an individual created a substantial risk of bodily injury). These actions would be more than sufficient to chill a person of ordinary firmness from continuing to film the traffic stop.

---

[11] Although Mr. Irizarry does not allege that he was in the path of the cruiser when Officer Yehia "gunned" it at Mr. Brandt, it is reasonable to infer that such conduct threatened Mr. Irizarry, who was nearby. App. at 10 ¶ 21.

Thus, given the allegations in the complaint, Mr. Irizarry has satisfied the second element of the *Worrell* test.

### 3. **Protected Activity Substantially Motivated Adverse Action**

To satisfy the third element of *Worrell*, Mr. Irizarry needed to allege that Officer Yehia's actions were "substantially motivated as a response to [Mr. Irizarry's] exercise of constitutionally protected conduct." *Worrell*, 219 F.3d at 1213 (quotations omitted). He did so by alleging that Officer Yehia drove to the scene of the traffic stop in response to officers already there advising him that "four males had arrived on [the] scene and were [] recording their D.U.I. traffic stop." App. at 9 ¶ 12. From this, it is reasonable to infer that Officer Yehia came to the scene because Mr. Irizarry was recording the encounter. And because Officer Yehia's physical interference with the filming and his driving the cruiser at Mr. Irizarry served no legitimate law enforcement purpose,[12] it is reasonable to infer that Mr. Irizarry's filming substantially motivated those actions.

\* \* \* \*

Mr. Irizarry has plausibly alleged that Officer Yehia committed a constitutional violation by retaliating against him for engaging in protected First Amendment activity. He has therefore satisfied prong one of qualified immunity.

---

[12] Officer Yehia "was ultimately instructed to dep[a]rt the scene due to his disruptive and uncontrolled behavior," App. 10 ¶ 22, which further supports the inference that his presence at the traffic stop served no legitimate law enforcement purpose.

B. *Prong Two—Clearly Established Law*

Mr. Irizarry also has shown that Officer Yehia violated his clearly established right to be free from retaliation for filming the police performing their public duties.

1. **Clearly Established Law**

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quotations omitted). "The law is clearly established when a Supreme Court or Tenth Circuit precedent is on point or the alleged right is clearly established from case law in other circuits." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017). Thus, even without Supreme Court or Tenth Circuit precedent, persuasive authority from other circuits may clearly establish the law in this circuit when that authority would have put a reasonable officer on notice that his or her conduct was unconstitutional. *See Ullery v. Bradley*, 949 F.3d 1282, 1291-92 (10th Cir. 2020) (law was clearly established based on the consensus of persuasive authority from six other circuits); *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 595 (10th Cir. 1999) (same).

To determine whether the law is clearly established, the relevant "precedent is considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Lowe*, 864 F.3d at 1208 (quotations omitted). Thus, "[g]eneral statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotations omitted); *see White v. Pauly*,

19

137 S. Ct. 548, 552 (2017) (per curiam). "When the public official's conduct is egregious, even a general precedent would apply with obvious clarity." *Lowe*, 864 F.3d at 1210.

2. **Analysis**

To overcome qualified immunity here, Mr. Irizarry must show that when the incident occurred, it was clearly established that (1) he was exercising a First Amendment right to film the police performing their duties in public, (2) Officer Yehia's actions would chill a person of ordinary firmness from continuing to film the traffic stop, and (3) Mr. Irizarry's protected activity motivated Officer Yehia's actions. *See Van Deelen*, 497 F.3d at 1159.

In May 2019, when the incident occurred, Mr. Irizarry had a clearly established right to film the traffic stop based on the persuasive weight of authority from six other circuits and our decision in *Western Watersheds*. Officer Yehia's obvious interference with that right, motivated by Mr. Irizarry's protected conduct, was a violation of clearly established law.

a. *Clearly established that Mr. Irizarry was engaged in protected activity*

i. Clearly established First Amendment right to film the police

Although neither the Supreme Court nor the Tenth Circuit has recognized a First Amendment right to record the police performing their duties in public, we hold that the right was clearly established here based on the persuasive authority from six other circuits, which places the constitutional question "beyond debate." *Cummings v. Dean*,

20

913 F.3d 1227, 1239 (10th Cir. 2019) (quotations omitted).  Our opinion in *Western Watersheds* also supports this conclusion.

As we said in *Ullery*, "In the absence of binding precedent specifically adjudicating the right at issue, the right may still be clearly established based on a 'consensus of cases of persuasive authority' from other jurisdictions."  949 F.3d at 1294 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  And the weight of authority from other circuits may clearly establish the law when at least six other circuits have recognized the right at issue.  *See, e.g.*, *id.* (the constitutional question was "beyond debate" where six other circuits agreed on the issue and there was not "a single decision . . . shedding doubt on" the issue); *Robbins v. Wilkie*, 433 F.3d 755, 770 (10th Cir. 2006) *rev'd and remanded on other grounds*, 551 U.S. 537 (same); *Anaya*, 195 F.3d at 595 (same).  In this case, our source of clearly established law comes largely from other circuits.

As discussed, the First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits have all concluded in published opinions that the First Amendment protects a right to film the police performing their duties in public.  Four of those opinions—*Fordyce*, *Glik*, *Fields*, and *Turner*—involved facts materially similar to those here:  the plaintiffs, like Mr. Irizarry, were attempting to film the police performing their official duties but were dissuaded from doing so either because they were arrested, detained, or physically

21

deterred.[13]  *Alvarez* involved a pre-enforcement challenge to a statute that made it a felony to film police officers in public.  All six decisions held there is a First Amendment right to film the police performing their duties in public, which clearly establishes the law in this circuit.

Moreover, in *Western Watersheds*, we indicated, without reservation, that filming the police performing their duties in public is protected under the First Amendment.  869 F.3d at 1196 ("An individual who photographs animals or takes notes about habitat conditions is creating speech in the same manner as an individual who records a police encounter.").  Although this statement, on its own, may be insufficient to satisfy prong two of qualified immunity, it supports the conclusion that a reasonable officer would have known there was a First Amendment right to film the police performing their duties in public.

Finally, Mr. Irizarry's right to film the police falls squarely within the First Amendment's core purposes to protect free and robust discussion of public affairs, hold government officials accountable, and check abuse of power.[14]  We have no doubt that

---

[13] In *Smith*, the Eleventh Circuit announced there is a right to film police performing their duties in public.  *Smith*, 212 F.3d at 1333.  But, without discussing the underlying facts of the case, the court held that the defendants had not violated that right.

[14] We need not and do not rely, however, on general First Amendment principles to show that clearly established law protects filming the police.  *See Frasier v. Evans*, 992 F.3d 1003, 1021 (10th Cir. 2021) (holding that "general First Amendment principles protecting the creation of speech and the gathering of news" do not clearly establish a First Amendment right to film the police).

Mr. Irizarry had a clearly established First Amendment right to film the traffic stop in May 2019.

ii. Officer Yehia's arguments

Officer Yehia argues that the right to film police officers performing their duties in public cannot be clearly established unless a previous Tenth Circuit case has already recognized the right. But we have repeatedly stated that "the weight of authority from other courts can clearly establish a right." *E.g.*, *A.N. by & through Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (quotations omitted). And we have held that decisions from other circuits clearly established the law when at least six circuits had recognized the right at issue. *See, e.g.*, *Ullery*, 949 F.3d at 1300-01; *Anaya*, 195 F.3d at 595.

Officer Yehia also argues that *Frasier v. Evans*, shows that the right to film police officers performing their duties in public was not clearly established as of May 2019. We disagree. In *Frasier*, the plaintiff filmed police officers arresting a suspect in 2014. 992 F.3d at 1010. After the arrest, officers allegedly intimidated the plaintiff and threatened to arrest him if he did not hand the video over to them. *Id.* at 1010-11. The plaintiff brought a § 1983 First Amendment claim against the officers, alleging that they retaliated against him for filming the suspect's arrest. *Id.* at 1011.

We held the officers were entitled to qualified immunity because, when the incident occurred on August 14, 2014, the law was not clearly established that the First Amendment protected a right to record police officers performing their official duties in public. *Id.* at 1020. We rejected the plaintiff's argument that "general First Amendment

23

principles protecting the creation of speech and the gathering of news [] provide[d] clearly established law." *Id.* at 1022. And we were not persuaded by the plaintiff's alternative argument that the weight of authority from other circuits clearly established the law. *Id.* Although we assumed that, as of August 2014, four decisions—*Alvarez*, *Slik*, *Smith*, and *Fordyce*—recognized a right to film police performing their duties in public, we said those cases did not clearly establish the law in our circuit because our sibling circuits had "disagreed regarding whether this purported First Amendment right to record was clearly established around August 2014." *Id.*

*Frasier* does not undercut our clearly-established-law analysis for two reasons.

<u>First</u>, the legal landscape has changed since August 2014 when the incident in *Frasier* occurred. Between August 2014 and May 2019, the Third and Fifth Circuits joined the four other circuits in concluding there is a First Amendment right to film the police performing their duties in public. *See Fields*, 862 F.3d at 360; *Turner*, 848 F.3d at 690. And, as noted above, we have held that the weight of authority from other circuits may clearly establish the law when at least six other circuits have recognized the right at issue. *See, e.g.*, *Ullery*, 949 F.3d at 1294.

<u>Second</u>, when analyzing whether the weight of authority from other circuits clearly establishes the law in this circuit, we have said the relevant inquiry is whether there is consensus regarding the existence of the constitutional right at issue. *See id.* at 1300 (concluding that the weight of authority from other circuits clearly established the law where "persuasive out-of-circuit authority addressing *the constitutional right in question* was not divided or otherwise unclear" (emphasis added)). Courts determine

24

whether a constitutional right exists and whether it has been violated from holdings made at the first step of qualified immunity. *See, e.g.*, *Ashaheed v. Currington*, 7 F.4th 1236, 1245 (10th Cir. 2021) (citing *Shrum v. City of Coweta*, 449 F.3d 1132, 1139-44 (10th Cir. 2006)).

As of May 2019, six circuits had determined that the First Amendment guarantees a right to film the police performing their duties in public. No other circuit has concluded otherwise. The substantial weight of this authority, along with our decision in *Western Watersheds*, would have put a reasonable officer in Officer Yehia's position on notice that Mr. Irizarry had a right to film the police conducting the traffic stop.

b. *Clearly established that Officer Yehia caused injuries sufficient to chill a person of ordinary firmness from continuing to film the traffic stop*

It also was clearly established that Officer Yehia caused injuries sufficient to chill a person of ordinary firmness from filming the traffic stop. As of May 2019, a reasonable officer would have known that physically interfering with and intimidating an individual who was filming a DUI traffic stop can chill First Amendment activity. Officer Yehia's conduct

(i) infringed Mr. Irizarry's First Amendment right with obvious clarity.

Also, his conduct was at least as egregious as police conduct found unconstitutional in

(ii) our sibling-circuit cases and

(iii) this circuit's *Van Deelen* opinion.

25

i.    Obvious clarity

In *Worrell* we described the objective retaliation element as actions causing injury

that would chill a person of ordinary firmness from continuing to engage in protected

activity.  Although this is a general statement of the law, it can supply clearly established

law here because it applies "with obvious clarity to the specific conduct in question."

*Halley*, 902 F.3d at 1149 (quotations omitted).  Because filming police conduct in public

is a clearly established First Amendment right, it would be obvious to a reasonable

officer that blocking Mr. Irizarry's filming, shining a flashlight into the camera lens, and

driving a police car at him in response to that filming would infringe First Amendment

protected activity and chill its exercise.

ii.    Sibling circuits

The filming cases from other circuits lend strong support because the retaliating

conduct here was at least as egregious as it was in those cases.  The First, Third, and Fifth

Circuits held that officers committed constitutional violations when they arrested or

detained plaintiffs for filming the police performing their duties in public.  *See Turner*,

848 F.3d at 683-84; *Fields*, 862 F.3d at 356;[15] *Glik*, 655 F.3d at 80.  And the Ninth

Circuit has indicated that "attempt[ing] physically to dissuade" a citizen from recording

---

[15] As we discussed above, *Fields* was a consolidated appeal resolving two cases. In one case, a plaintiff used his phone to record police activity.  862 F.3d at 356.  Police arrested the plaintiff, confiscated his phone, and detained him.  *Id.*  In the other case, a plaintiff was filming an arrest when "[a]n officer abruptly pushed [her] and pinned her against a pillar for one to three minutes, which prevented her from observing or recording the arrest."  *Id.*

the police would violate the First Amendment. *Fordyce*, 55 F.3d at 438. The police interference with protected activity in those cases caused a chilling effect that is materially the same as that caused by the injury here. Driving his car at Mr. Irizarry was at least as egregious as arresting an individual or physically interfering with filming in the other circuit cases. Apart from the obvious infringing conduct here, the relevant out-of-circuit cases would put an officer on notice that attempting to deter an individual from filming the police through physical interference and threats causes injury sufficient to chill the speech of a person of ordinary firmness.

  iii.  *Van Deelen*

Our opinion in *Van Deelen* also helps Mr. Irizarry to overcome qualified immunity. There, a sheriff's deputy threatened to use lethal force against the plaintiff if he brought more tax appeals, and the deputy physically "bump[ed]" the plaintiff during a meeting. 497 F.3d at 1154. Other county officials "scowl[ed]" and "star[ed]" at the plaintiff. *Id.* We held the defendants who made the alleged threats were not entitled to qualified immunity because, as of 2005, it was "unremarkabl[e]" that "a reasonable government official should have clearly understood . . . that physical and verbal intimidation intended to deter a citizen" from engaging in protected First Amendment activity violates that citizen's constitutional rights. *Id.* at 1159.

Officer Yehia's conduct was at least as serious as the defendants' conduct in *Van Deelen* for two reasons. First, rather than merely discouraging Mr. Irizarry from engaging in protected First Amendment activity—as the defendants did in *Van Deelen*—Officer Yehia physically interfered with protected conduct by standing in front of Mr.

27

Irizarry and shining a flashlight into his camera.  App. at 10 ¶¶ 14, 17.  <u>Second</u>, Officer Yehia went beyond threatening violence against Mr. Irizarry.  When he drove his police cruiser "right at" him and "gunn[ed]" the vehicle at his colleague, he could have caused serious injury or even death.  *Id.* at 10 ¶¶ 20-21; *see Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1315 (10th Cir. 2009) (acknowledging that an officer's vehicle can inflict serious bodily harm or even death).  Officer Yehia's conduct was so "disruptive and uncontrolled" that he was "instructed to dep[a]rt the scene."  App. at 10 ¶ 22.  And as discussed above, the complaint adequately alleged that Officer Yehia's actions, like the defendants' conduct in *Van Deelen*, were substantially motivated by the protected activity.  *Van Deelen* would give a reasonable officer further reason to understand that Officer Yehia actions caused injuries sufficient to chill a person of ordinary firmness from continuing to film the traffic stop.

     c.  *Officer Yehia's motivation for retaliation*

As explained in our prong one qualified immunity discussion, Mr. Irizarry has plausibly alleged the three elements of a First Amendment retaliation constitutional tort, including the subjective element that his protected activity motivated Officer Yehia's conduct.  Because Mr. Irizarry has shown that a reasonable officer would know that this conduct would chill a person of ordinary firmness from continuing to engage in protected activity, it follows that a reasonable officer also would know that Officer Yehia committed a First Amendment retaliation violation when Mr. Irizarry's protected activity motivated Officer Yehia's actions.

28

* * * *

Thus, as to all three elements of First Amendment retaliation, Mr. Irizarry has shown a violation of clearly established law.  Officer Yehia is not entitled to qualified immunity.

## III.  CONCLUSION

We reverse and remand for further proceedings consistent with this opinion.